IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Dempsey McIntyre, | C/A No. 4:11-1573-TLW-KDW |
| v. | REPORT AND RECOMMENDATION |
| Horry County, South Carolina; Phillip Thompson, Sheriff; Jim Simmons, SCHP, | |
| Defendants. | |

Plaintiff, a former state pretrial detainee proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff is not currently incarcerated. Plaintiff complains that on June 24, 2010, he was unlawfully arrested and during his incarceration he was denied medical screening and treatment; that he was transported to the detention center in a "hot box" constituting cruel and unusual punishment; that he was denied a probable cause hearing; and that he was required to register as a sex offender without being provided the right to challenge lifetime supervision.[1] This matter is before the Court on the Defendants' Motion for Summary Judgment filed on May 18, 2012. ECF No. 51. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[2] order on May 21, 2012 advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 52. Plaintiff responded to Defendants' Motion for Summary Judgment on May 25, 2012, ECF No. 55, and Defendants filed a reply on June 4, 2012, ECF No. 56. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the

---

[1] Plaintiff's allegations regarding his registration as a sex offender are unrelated to his June 2010 arrest and detention.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[3] Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I.   Background

On June 24, 2010 at 1:54 a.m., Defendant J.M. Simmons, with the South Carolina Highway Patrol, performed a traffic stop on Plaintiff in North Myrtle Beach, Horry County. ECF No. 1 at 3. Defendant Simmons attests that Plaintiff was stopped because he was "weaving all over the roadway," ran a stop sign, and when Simmons approached Plaintiff's vehicle he "noticed a strong odor of alcohol, glassy bloodshot eyes, and slurred speech about Plaintiff." ECF No. 51-2 at 1. Plaintiff states that he was asked to exit his vehicle and to sit in Defendant Simmons's patrol car, and that shortly thereafter Simmons asked Plaintiff to perform a roadside sobriety test, which Plaintiff refused. ECF No. 1 at 3. Plaintiff contends that he was then arrested for driving while under the influence ("DUI"). *Id.*

Plaintiff alleges that Defendants Horry County and Deputy Sheriff Thompson transported Plaintiff from the North Myrtle Beach jail to J. Reuben Long Detention Center. *Id.* at 4. Plaintiff contends that he was transported in a "small panel van, with a small steel cage, used as a sweat box, installed in the back." *Id.* Plaintiff alleges that his hands and feet were chained and the cage was padlocked which would have placed his life "in extreme danger, had there had been an accident or fire with this van involved." *Id.* Plaintiff also argues that there was only one person driving the van, and if the driver had been incapacitated, there would be no one to free Plaintiff. *Id.* Plaintiff further alleges that the extreme heat during his one-hour transport caused him to suffer shortness of breath and chest

---
[3] On January 2, 2012, this matter was reassigned from United Magistrate Judge Shiva V. Hodges to the undersigned. ECF No. 38.

pains. *Id.* Plaintiff argues that the lack of air conditioning, his inability to stand, and having to sit stooped on a hot steel surface for an hour was clearly deliberate indifference to his right to be free from cruel and unusual punishment. *Id.* at 4-5.

Plaintiff argues that once he arrived at J. Reuben Long Detention Center, Defendants Horry County and Thompson did not provide Plaintiff with any pre-intake medical screening. *Id.* at 5. Plaintiff argues that his transition from a "steaming hot steel cage" to the "ice cold" intake area caused him "to get dizzy and light headed." *Id.* Plaintiff contends that he told a female intake officer that he had heart problems and she told him to make a written request to see medical after he was taken to a cell. *Id.* Plaintiff contends that he was locked up without his heart medication and was never seen by any medical personnel in deliberate indifference to his medical needs as a pre-trial detainee. *Id.* Plaintiff contends that later that afternoon he was taken before a judge and bail was set; however, Plaintiff alleges that he was never given a probable cause hearing by Defendant Horry County. *Id.* Plaintiff was released from the detention center on the same day he was arrested and his DUI case was dismissed on May 6, 2011. *Id.;* ECF No. 51-4 at 2.

Finally, Plaintiff contends that Defendants Horry County and Thompson are enforcing South Carolina Code Ann. § 23-3-400 et. seq.,[4] against Plaintiff which has "sentenced [Plaintiff] to lifetime supervision and registration without any judicial oversight or determinations and denies [Plaintiff] equal protection of access to the state courts, in violation of the 1st Amendment." *Id.* at 7. Plaintiff argues that S.C. Code Ann. § 23-3-400 fails to provide him with an avenue to challenge the lifetime sentence which denies Plaintiff

---

[4] South Carolina Code Ann. § 23-3-400 et. seq. is the Sex Offender Registry. This statute requires that persons who have been convicted of, pled guilty or nolo contendere to, or been adjudicated delinquent of certain offenses involving criminal sexual conduct register as sex offenders.

3

equal protection of the Fourth Amendment which "protects [Plaintiff's] right to be left alone by Horry County and the Sheriff." *Id.*

Plaintiff seeks damages in the amount $1,225,000 and a declaratory judgment that "S.C. Code Ann. § 23-[3-]400 thru 550 is unconstitutional in violation of [Plaintiff's] equal protection rights of the 14th Amendment." ECF No. 1 at 8. Plaintiff also asks the court to enjoin Defendants Horry County and Thompson from any further enforcement of South Carolina Code Ann. § 23-3-400 through 550 against Plaintiff. *Id.*

II. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    III.    Analysis

        A. Eleventh Amendment Immunity

Plaintiff is suing Defendant Horry County in its individual capacity and Defendants Thompson and Simmons in their individual and official capacities. ECF No. 1 at 2. Defendants contend that they are entitled to summary judgment on any claims that Plaintiff has brought against them in their official capacity. ECF No. 51-1 at 5. Plaintiff contends that Defendants' immunity defense should fail because municipalities do not have qualified or absolute immunity in a suit under § 1983. ECF No. 55 at 2.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash*

*v. Granville Cnty. Bd. of Ed.,* 242 F.3d 219, 222 (4th Cir. 2001). The Eleventh Amendment does not, however, protect local governments such as counties and municipalities. *Id.*

In the state of South Carolina, county sheriffs and their deputies are state employees. *Edwards v. Lexington Cnty. Sheriff's Dep't*, 688 S.E.2d 125, 127 n. 1 (S.C. 2010) ("However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."). The South Carolina Highway Patrol is the law enforcement division of the South Carolina Department of Highways and Public Transportation and functions as an arm of state government and is an alter ego of the State of South Carolina. *Simmons v. South Carolina State Highway Dep't*, 195 F. Supp. 516 (D.S.C. 1961). As a result, Defendants Sheriff Thompson and South Carolina Highway patrolman Simmons are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983.").

A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman,* 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants Thompson and Simmons are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Thompson and Simmons in their official capacities be dismissed.

    B. Unlawful Arrest

In his Complaint, Plaintiff contends that Defendant Simmons arrested him because Plaintiff refused to perform a roadside sobriety test. ECF No. 1 at 3. Plaintiff argues that he

was exercising his Fifth Amendment right against self-incrimination and that Simmons arrested him as punishment for exercising those rights. *Id.* Defendants move for summary judgment and submit an affidavit from Defendant J.M. Simmons who attests that he initially stopped Plaintiff because he observed Plaintiff's vehicle swerving on the road and because Plaintiff ran a stop sign. ECF No. 51-2 at 1. Simmons avers that when he approached Plaintiff's vehicle he "noticed a strong smell of alcohol" and Plaintiff's speech was slurred and his eyes were bloodshot and glassy. *Id.* Simmons attests that when Plaintiff stepped out his vehicle Plaintiff was unsteady and balanced himself on his vehicle. *Id.* Simmons also continued to notice a strong odor of alcohol from Plaintiff and that Plaintiff was having difficulty speaking sentences. *Id.* at 2. Simmons attests that Plaintiff became belligerent and refused to perform a sobriety test and at this point he arrested Plaintiff. *Id.* In response to this argument, Plaintiff contends that S.C. Implied Consent law does not provide for arrest for refusing to take a test. ECF No. 55 at 2. Plaintiff also argues that there was no evidence to support a probable cause finding "because unsupported assertions or belief of a police officer does not satisfy the probable cause requirement." *Id.* at 3.

Under Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect

actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). As a result, in order to prove an absence of probable cause, Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" Plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

In the case at hand, Plaintiff has failed to allege such facts. Plaintiff's criticisms and assertions that Defendant Simmons arrested him because he refused to take a sobriety test do not make it unjustifiable for Defendant Simmons to conclude that Plaintiff was in violation of South Carolina DUI laws. Defendant Simmons determined he had probable cause to arrest Plaintiff for DUI based upon his personal observations of Plaintiff's vehicle "weaving all over the roadway," Plaintiff's running a stop sign, Plaintiff being unsteady on his feet, slurring his speech, and having a strong smell of alcohol on his person and breath. The totality of the facts and circumstances within Defendant Simmons's knowledge on June 24, 2010 were sufficient to warrant a prudent or reasonable person to believe that Plaintiff had committed or was committing the criminal offense for which he was arrested. Based upon

this information, Defendant Simmons had probable cause to arrest Plaintiff and the undersigned recommends that Defendants be granted summary judgment on this claim.

### C. Cruel and Unusual Punishment

Plaintiff contends that Defendants Horry County and Thompson, by and through an authorized deputy sheriff, transported him to the detention center in violation of his constitutional rights. Plaintiff alleges the mode of transportation constituted cruel and unusual punishment due to how Plaintiff was chained, how his movements were restricted, and the hot temperatures in the "sweat box." ECF No. 1 at 4-5.

Conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979); *see also Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Martin*, 849 F.2d at 870. Not every inconvenience that is encountered during pre-trial detention amounts to "punishment" in the constitutional sense. *Id.*

In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be better operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995). Only conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to establish the imposition of cruel and unusual

punishment, plaintiff must prove two elements—that he suffered deprivation of a basic human need that was "objectively sufficiently serious," and that "subjectively [defendants] acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). To withstand summary judgment on a challenge to prison conditions, Plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Defendants move for summary judgment on this claim and argue that Plaintiff has not alleged any injury as a result of the purported cruel and unusual punishment. ECF No. 51-1 at 9. Defendants offer the affidavit of Horry County deputy John Hamilton who transported Plaintiff to J. Reuben Long Detention Center. ECF No. 51-3. Mr. Hamilton attests that Plaintiff's transportation was not out of the ordinary and that Plaintiff "did not complain of shortness of breath or chest pains." *Id.* at 1. Defendants also offer the affidavit of Horry County deputy Deborah Brown who works as an intake officer for J. Reuben Long Detention Center. ECF No. 51-4 at 1. Ms. Brown attests that Plaintiff "was taken through a medical screening" upon his arrival at the detention center and Plaintiff denied that he needed medical attention. *Id.* at 2. Defendants also attached Plaintiff's answers to interrogatories in which Plaintiff admitted that following his release he did not obtain medical treatment for his claimed chest pains and shortness of breath. ECF No. 51-5 at 3. In response, Plaintiff contends that he could not complain to the driver because the driver was in the cab of the van and there was a thick sheet of plexiglass separating them and no air holes or any way to talk to him. ECF No. 55 at 4-5. Plaintiff also explained that he did not visit a doctor once he was

released but he took medication to relieve the chest pains and shortness of breath when he arrived home. *Id.* at 5.

The undersigned finds that Plaintiff has not produced any evidence that he sustained any serious or significant physical injury as a result of the challenged conditions, and therefore recommends that Defendants be granted summary judgment on Plaintiff's conditions of confinement claim. *See Strickler*, 989 F.2d at 1381 ("The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment.").

### D. Denial of Medical Treatment

Plaintiff contends that Defendants Horry County and Thompson were deliberately and intentionally indifferent to his medical needs when they did not provide any pre-intake medical screening. ECF No. 1 at 5. Plaintiff also complains that Defendants required him to submit a written request to see the medical staff although Plaintiff informed Defendants that he had heart problems. *Id.* Defendants argue they are entitled to summary judgment on this claim and submit an affidavit from Deputy Deborah Brown, an intake officer at J. Reuben Long Detention Center. ECF No. 51-4. Ms. Brown attests that Plaintiff arrived at J. Reuben at 2:00 p.m. and "was processed like every other detainee." *Id.* at 1. Ms. Brown avers that Plaintiff was given a "thorough medical screening" where he disclosed that he had a history of heart disease and was taking heart medication. *Id.* at 2. Ms. Brown contends that Plaintiff indicated that he did not require immediate medical attention and that he understood that he could request to see medical staff at any time. *Id.* Ms. Brown states that "[a]t no point does

[Plaintiff's] file indicate that he made any inquiry or request to see medical personnel prior to his release." *Id.* Plaintiff was released at 5:23 p.m. *Id.* In response, Plaintiff contends that Defendants failed to follow the detention center's medical policies and procedures, and argues that once he informed Defendants that he had heart disease and was taking medication that he should have been taken directly to the medical clinic. ECF No. 55 at 5-6. Plaintiff also argues that he was unable to request to see medical staff because he was never given a paper or pencil. *Id.* at 6.

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named Defendants were deliberately indifferent to his serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986). None of the Defendants named in Plaintiff's Complaint are medical professionals; therefore, Plaintiff must also demonstrate that Defendants (1) were personally involved in the denial of treatment, (2) deliberately interfered with the prison doctor's treatment or (3) tacitly authorized or were indifferent to the prison doctor's misconduct. *Miller v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding medical treatment for his heart condition against Defendants Horry County and Thompson, who are non-medical personnel. Plaintiff does not allege that these Defendants were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians'

misconduct. In fact, it is undisputed that Plaintiff's medical needs were evaluated upon his arrival at the detention center, and Plaintiff did not inform prison personnel of any medical condition or symptom that required immediate medical treatment. Therefore, the undersigned recommends that summary judgment be granted as to this claim.

### E. Failure to Provide Probable Cause Hearing

Plaintiff contends that his Fourth and Fourteenth Amendment rights were violated when he did not receive a probable cause hearing following his arrest for DUI. ECF No. 1 at 6. Defendants argue that Plaintiff does not have a constitutional right to a probable cause hearing, and that Plaintiff waived his right to a hearing when he failed to timely request one. ECF No. 51-1 at 11. In response, Plaintiff contends that "defendants argument misses the mark. The issue of a probable cause hearing after arrest is a 4th and 14th amendment principle." ECF No. 55 at 6. Plaintiff argues that "this issue has nothing to do with the State of South Carolina's preliminary hearing statute." *Id.* Defendants argue that Plaintiff was incarcerated for "just over three hours" and was then released, and that the cases Plaintiff cites in support of his argument address detainees who remained in custody following their arrest. ECF No. 56 at 4.

The Fourth Amendment requires prompt judicial determination of probable cause as a prerequisite to an extended restraint on liberty following an arrest without a warrant. *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Id.* at 124-25. "Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial." *Id.* at 125, n.

26. The record establishes that Plaintiff was incarcerated at the detention center for a little more than three hours, arriving at the detention center on June 24, 2010 at 2:00 p.m. and released this same day at 5:23 p.m. ECF No. 51-1 at 1-2. Plaintiff has not shown that following his release he was subjected to an extended restraint on his liberty.[5] As such, Plaintiff has not established that the Fourth Amendment required a probable cause determination. The undersigned, therefore, recommends that Defendants be granted summary judgment on this claim.

### F. Sex Offender Registration

Defendants contend they are entitled to summary judgment on Plaintiff's claim that the requirement that he register as a sex offender violates his equal protection rights. ECF No. 51-1 at 11. Defendants argue that "the registration of offenders . . . does not violate due process; registration is rationally related to achieving [the] legitimate objective of protecting [the] public from those offenders who may re-offend." *Id.* Defendants further argue that they are not the proper parties to challenge the constitutionality of this statute because they "ha[d] no influence over the 'judicial determination' of whether Plaintiff is required to register" and did not draft or pass the law. *Id.* at. 12. In response, Plaintiff cites to *State v. Dykes*, 728 S.E.2d 455 (S.C. 2012) and alleges that he is being denied equal protection under the United States Constitution and his substantive due process rights are violated because "[S.C. Code Ann.] 23-3-400 thur [sic] 23-3-500 does not have a statutory mechanism to petition the court for relief from lifetime supervision with no right to appeal." ECF No. 55 at 8. Plaintiff argues that he has a "liberty interest to be free of forced registration until [his] death." *Id.* at

---

[5] Plaintiff's arrest and detainment on June 24, 2010 did not involve Plaintiff's registration as a sex offender.

9. Plaintiff further contends that Defendant Thompson "is the proper defendant because he is the enforcement arm of the statute and the issue is ripe for adjudication." *Id.*

As an initial matter, by maintaining Plaintiff's registration on the Sex Offender Registry Defendant Thompson is carrying out his official duties as Horry County Sheriff and he is immune from civil liability. *See* S.C. Code Ann. § 23-3-520(A) ("An appointed or elected public official, public employee, or public agency is immune from civil liability for damages for any act or omission under [the Sex Offender Registry] article unless the official's, employee's, or agency's conduct constitutes gross negligence.").

Further, the issue in *Dykes* is distinguishable from Plaintiff's claim. The narrow liberty interest implicated in that case was the violation of substantive due process rights related to lifetime satellite monitoring of individuals who pose a low risk of reoffending. *State v. Dykes*, 728 S.E.2d at 465. The record before the court shows that Plaintiff has failed to offer any facts that show that he is subject to satellite monitoring or that he falls within the narrow exception carved out by the South Carolina Supreme Court such that his claim implicates substantive due process concerns. The *Dykes* court reiterated the holding of numerous courts that "convicted sex offenders do not have a fundamental liberty interest to be free from registration requirements." *Id.* at 463 (citing cases). Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.

### G. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. ECF No. 51-1 at 6-12. In *Harlow v. Fitzgerald,* 457 U.S. at 818, the Supreme Court established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the court finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 51, be granted, and that this case be dismissed.

IT IS SO RECOMMENDED.

October 18, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**